**UNITED STATES of America,**
**Plaintiff,**

v.

**Abolfazl TAGHIZADEH and Zahra Taghizadeh, Defendants.**

**No. Civ.A. 98–2581–CM.**

United States District Court,
D. Kansas.

May 30, 2000.

Robert A. Olsen, Office of United States Attorney, Kansas City, KS, for United States of America, plaintiff.

Michael B. Dunalewicz, Overland Park, KS, for Abolfazl Taghizadeh, defendants.

### *MEMORANDUM AND ORDER*

MURGUIA, District Judge.

The United States of America filed suit against defendants Abolfazl and Zahra Taghizadeh seeking to recover an alleged overpayment of supplemental security income (SSI) benefits. Pending before the court is plaintiff's motion for summary judgment (Doc. 17). For the reasons set forth below, plaintiff's motion is granted and defendants are ordered to make repayment to the United States of America as specified herein.

## I. Facts[1]

Defendants Abolfazl and Zahra Taghizadeh filed an application for SSI benefits on July 9, 1991. Based upon this application, the Social Security Administration (SSA) determined them eligible to receive SSI benefits beginning in July 1991. On September 18, 1991, November 11, 1993, and October 3, 1995, defendants completed and signed statements for determining their continuing eligibility for SSI benefits. Based upon each of these statements, the SSA determined defendants eligible to continue the receipt of SSI benefits without reduction through June 1996.

Defendants represented on their initial application that they did not have any checking accounts, savings accounts or certificates of deposits (CDs) in their names and that they did not have any interest income. In contrast, however, bank records evidence two checking accounts, one in both defendants' names and one in defendant Abolfazl Taghizadeh's name, with balances totaling $27,238.21 on the date defendants completed the application for SSI benefits.

Defendants again represented on their September 18, 1991 statement for continuing eligibility that they did not have any checking accounts, savings accounts or CDs in their names and that they did not have any interest income. The statement referenced the period from July 1991 to the date of the statement. In contrast, however, bank records evidence two checking accounts, one in both defendants' names and one in defendant Abolfazl Taghizadeh's name, with balances totaling $22,989.68 on the date defendants' statement for continuing benefits was completed.

Defendants again represented on their November 11, 1993 statement for continuing eligibility that they did not have any checking accounts, savings accounts or CDs in their names and that they did not have any interest income. The statement referenced the period from September 1991 to the date of the statement. In contrast, however, bank records evidence two checking accounts, one in both defendants' names and one in defendant Abolfazl Taghizadeh's name, with balances totaling $195,927.50 on the date defendants' statement for continuing benefits was completed.

Defendants represented on their October 3, 1995 statement that they did not have any interest income, but that they had one checking account with a balance of $1,300.00. Defendants further indicated that their names did not appear on any other account that they considered their own. The statement referenced the period from November 1993 to the date of the statement. However, bank records evidence two checking accounts, one in both defendants' names and one in defendant Abolfazl Taghizadeh's name, with balances totaling $2,729.86 on the date defendants' statement for continuing benefits was completed. In addition, bank records evidence three CDs defendants held as of the date of the defendants' statement, two in the name of both defendants[2] with original balances of $6,150.00 and one in the name of defendant Zahra Taghizadeh alone with an original balance of $1,250.00.[3]

Based upon the representations made in each of these statements, defendants continued to receive SSI benefits without reduction. Defendants received SSI benefit checks beginning in July 1991 and continuing through June 1996. During this time

---

1. In accordance with the applicable summary judgment standard, the facts relayed are uncontroverted or related in the light most favorable to the defendants, the nonmoving parties.

2. Although one of the names appearing on the CDs referenced is Zahara Sadeghin, the social security number on the CDs matches that of the defendant Zahra Taghizadeh.

3. The court is unable to determine what amount, if any, of interest income defendants received from these CDs as of the date the statement for continuing eligibility was completed.

period each individual defendant received benefits totaling $13,573.92, for a combined total amount of $27,147.84.

In June 1996 the SSA suspended defendants' benefits based upon its belief that defendants possessed resources in excess of the $3,000.00 resource eligibility limit and required defendants to submit a new statement for determining continuing eligibility for SSI payments covering the period from July 1991 to the date the statement was completed. Defendants completed this additional statement on October 29, 1996.

Defendants represented on their October 29, 1996 statement (representing the period of July 1991 to October 29, 1996) that although they did not have any interest income, they did have two checking account with a combined balance of $1,771.70. Defendants further indicated that they possessed a bank account in Tehran that they had owned for fifty years.[4] However, bank records evidence that defendants earned interest income on funds deposited with three separate banks during the period from July 1991 to October 29, 1996. Further, bank records evidence two additional undisclosed checking accounts held by defendants during the period covered by the statement.

Defendants assert that although their names appeared on the undisclosed accounts, they did not have any "beneficial interest" in the accounts. Rather, they held the funds "in trust" for their son, who had forwarded to the funds to them from Iran as he prepared for his 1989 immigration to the United States. (Aff. of Def. Abolfazl Taghizadeh, ¶¶ 1–6 and Aff. of Mehdi Taghizadeh, ¶¶ 1–7, submitted with Defs.' Response). These funds were not spent for the personal gain of the defendants, and instead the funds were spent only upon the direction of the son for the purpose of establishing the son's business.

Plaintiff now seeks to recover all amounts paid to defendants as SSI benefits, asserting that due to the balances of the accounts undisclosed on defendants' applications and continuing eligibility statements, defendants failed to meet the $3,000.00 resource eligibility requirement for the receipt of SSI benefits under the Social Security Act.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See id.* at 670–71. Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *See Anderson*, 477 U.S. at 256,

---

4. The court is unable to determine the balance of the defendants' account in Tehran from the papers submitted by the parties in connection with the motion at issue.

106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

### III. Plaintiff's Claim of SSI Benefit Overpayment

Plaintiff claims that defendants made false and misleading representations on their initial application and on statements for determining continuing eligibility for SSI benefits causing an overpayment of SSI benefits. Plaintiff seeks repayment of these benefits and requests the court to enter judgment against defendants in the amount of $27,147.84, with an additional award of interest and attorneys fees. Defendants deny that any material misrepresentations were made and contend they were eligible to receive SSI benefits during the relevant period. The court agrees with plaintiff and grants its motion for summary judgment.

### A. Eligibility for SSI Benefits Under the Social Security Act

■ The Social Security Administration (SSA) is entitled to recover overpayments of benefits. *See* 42 U.S.C. § 1383(b)(1) (Supp.1999). The Commissioner of the SSA bears the burden of proving the existence of an overpayment. *See Cannuni ex rel Cannuni v. Schweiker*, 740 F.2d 260, 263 (3d Cir.1984) ("The statute does not designate which party bears the burden of proof to establish the fact of overpayment. We agree with the Court of Appeals for the Eighth Circuit that when the government seeks to recover an alleged overpayment, it must demonstrate that the claimant was not entitled to the Social Security funds."); *Burrow v. Finch*, 431 F.2d 486, 491 n. 5 (8th Cir.1970); *Tumbarello v. Apfel*, 1999 WL 160263, *3 (N.D.Ill. March 10, 1999).

■ Recovery of SSI benefit overpayment may be waived, however, if the claimant is "without fault in connection with the overpayment," and the "recovery ... would defeat the purpose of this subchapter, or be against equity or good conscience." 42 U.S.C. § 1383(b)(1)(B) (Supp. 1999); 20 C.F.R. §§ 416.550–416.555 (1999). The individual seeking a waiver has the burden of establishing a right to waiver of the overpayment. *See Romero v. Harris*, 675 F.2d 1100, 1103 (10th Cir. 1982) ("In order to come within these provisions [20 C.F.R. § 416.550] for waiver of adjustment or recovery to recoup overpayments a recipient must make the showing that he comes within such waiver provisions."). In determining whether an individual is "without fault" the SSA:

considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition). In determining whether an individual is without fault based on a consideration of these factors, the Social Security Administration will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have. Although the finding depends on all of the circumstances in the particular case, an individual will be

found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following: (a) Failure to furnish information which the individual knew or should have known was material; (b) An incorrect statement made by the individual which he knew or should have known was incorrect (this includes the individual's furnishing his opinion or conclusion when he was asked for facts), or (c) The individual did not return a payment which he knew or could have been expected to know was incorrect.

20 C.F.R. § 416.552.

Here, the government contends that defendants were ineligible for benefits under subchapter XVI of the Social Security Act because they possessed resources in excess of $3,000.00, thereby disqualifying them from the receipt of benefits.

### B. Resources Considered for Eligibility Under SSI Benefits Determination

Subchapter XVI of the Social Security Act provides for payments to disabled persons of limited income and resources. 42 U.S.C. § 1381 *et seq.* (1992 & Supp.1999). Individuals with a spouse who have resources (other than those of a specified nature) in excess of $3,000.00 are not eligible for benefits. 42 U.S.C. § 1382(a)(1)(B), (a)(2)(B) & (a)(3)(A) (Supp.1999); 20 C.F.R. § 416.1205(c) (1999). The resources of married persons are aggregated to determine eligibility. *Id.* The statute does not define "resources." However, certain items, such as a home, household goods of reasonable value, and a burial plot are specifically excluded from the determination. 42 U.S.C. § 1382b(a).

The regulations promulgated under the Social Security Act define the meaning of "resources." 20 C.F.R. § 416.1201 (1999). The regulation defines resources as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to

cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). The regulations specify that "[i]f the individual has the right, authority or power to liquidate the property or his or her share of the property it is considered a resource." *Id.* at § 416.1201(a)(1). Examples of resources that are considered liquid include "cash[,] . . . financial institution accounts (including savings, checking, and time deposits, also known as certificates of deposits)."

In 1994 the regulations were amended to specify that "[f]unds held in a financial institution account (including savings, checking, and time deposits, also known as certificates of deposit) are an individual's resource if the individual owns the account and can use the funds for his or her support and maintenance." *Id.* at 416.1208(a). The manner in which an individual holds an account, as reflected in the way the account is entitled, determines whether an individual owns the account and can use its funds for support and maintenance. *Id.*

Where an account is individually held with an individual designated as the "sole owner by the account title" **and** that individual "can withdraw funds and use them for his or her support and maintenance" then "all of the funds, regardless of their source, are that individual's resource." *Id.* As long as these conditions are met, the regulations "presume that the individual owns 100 percent of the funds in the account." The presumption is "non-rebuttable." *Id.* Similar standards apply for jointly-held accounts with a rebuttable presumption of ownership. *See id.* at 416.1208(c).

### C. Defendants' Eligibility for SSI Benefits

#### 1. Overpayment of SSI Benefits

■ Here, it is undisputed that during the period from June 1991 to June 1996, the period defendants received SSI benefits, defendants' names appeared on financial institution accounts including bank accounts and certificates of deposit, with totals exceeding the $3,000.00 resource el-

igibility limit. Further, it is undisputed that defendants did not disclose the existence of these accounts on their application for SSI benefits or on each subsequent statement for continuing eligibility for SSI benefits.

The court's research has not revealed any precedent interpreting the 1994 federal regulations regarding the ownership of bank accounts. Counsel have not called any relevant citations to the court's attention. Accordingly, the court has examined case law interpreting the term "resources" prior to the addition of the 1994 regulatory provision. This court agrees with the Third Circuit that when referring to resources "Congress intended the term to mean property the claimant owns or has the current right to use for his own benefit." *See Cannuni*, 740 F.2d at 264.

■ Defendants have not come forward with sufficient evidence to establish that they were unable to use the funds within the accounts for their own support and maintenance. Defendants have submitted affidavits[5] indicating that the funds in all accounts held during the relevant period were held in "trust" for their son. However, defendants have not submitted evidence to establish that the arrangement with their son separated the legal and equitable title to the funds at issue such that they were legally unable to utilize the funds. *See Seymour v. Freer*, 8 Wall. 202, 75 U.S. 202, 213, 19 L.Ed. 306 (1868) (indicating for a valid trust to exist there must be "rights, titles, and interests in property distinct from legal ownership."). Accordingly, the court finds the plaintiff has met its burden to establish overpayment of SSI benefits to defendants.

## 2. Waiver of Overpayment

■ Further, the court finds that defendants have not met their burden to establish that the overpayment should be waived. Although provided the opportunity through the motion response process, defendants have not presented sufficient evidence to establish that they were without fault in connection with the overpayment. Defendants do not set forth evidence to establish that they were without understanding of the reporting requirements, or knowledge of the occurrence of events that should have been reported. Further, the record shows that defendants were given ample opportunity to comply with the reporting requirements, as they had opportunity to inform the SSA of all resources in each of the four statements for continuing benefit eligibility they completed subsequent to their application. The court finds based upon the record presented that no reasonable fact finder could conclude that defendants were without fault in connection with their failure to furnish information which they knew or should have known was material to the SSI benefit eligibility determination or in connection with the incorrect statements they made regarding their resources.

Accordingly, the court finds defendants were not eligible to receive SSI benefits during the period from June 1991 to June 1996 because they had resources they could have used for their support and maintenance in excess of the $3,000.00 resource eligibility limit. Therefore, the court enters judgment in favor of the United States, and orders each individual defendant to repay to the United States of America the amount of $13,573.92, for a combined total judgment of $27,147.84. In addition, each defendant is ordered to pay postjudgment interest on their individual judgment amount, pursuant to 28 U.S.C. § 1961 (1994 & Supp.2000).

## IV. Order

Accordingly, IT IS ORDERED THAT plaintiff's motion for summary judgment

---

**5.** Plaintiff has asserted that defendants' failure to present their theory of a lack of "equitable interest" in the bank accounts at issue during the discovery process should preclude defendants from relying on the theory in their summary judgment response. The court does not reach this issue because, under Federal Rule of Civil Procedure 56, even with consideration of the affidavits, the evidence presented by defendants is insufficient to prevent the entry of summary judgment for plaintiff.

(Doc. 17) is granted and judgment is entered for plaintiff. Each individual defendant is ordered to repay to the United States of America the amount of $13,573.92, for a combined total judgment of $27,147.84. In addition, each defendant is ordered to pay postjudgment interest on their individual judgment amount, pursuant to 28 U.S.C. § 1961.